IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| OVERTON WAYNE PAULEY, et al., | ) | |
|---|---|---|
| Plaintiffs | ) | C.A. No. 15-158 Erie |
| | ) | |
| v. | ) | |
| | ) | Magistrate Judge Baxter |
| CHARLES E. SAMUELS, JR., et al., | ) | |
| Defendants. | ) | |

## **OPINION AND ORDER**[1]

United States Magistrate Judge Susan Paradise Baxter

### **I.**  **INTRODUCTION**

#### **A.**  **Relevant Procedural History**

On or about May 5, 2015, Plaintiffs Overton Wayne Pauley ("Pauley"), William Rhoades ("Rhoades"), William Thompson ("Thompson"), and five other inmates who were then members of the Asatru/Odinist faith community at the Federal Correctional Institution at McKean in Bradford, Pennsylvania ("FCI-McKean"),[2] filed this *pro se* civil rights action in the McKean County Court of Common Pleas in Smethport, Pennsylvania. The case was removed to this Court pursuant to a Notice of Removal filed June 23, 2015. [ECF No. 1]. Named as Defendants are

---

[1] The parties have consented to having a United States Magistrate Judge exercise jurisdiction over this matter. [ECF Nos. 8, 10, 11, 12).

[2] In addition to Plaintiffs Pauley, Rhoades, and Thompson, the original Plaintiffs included Zachary T. King ("King"), David J. Gower ("Gower"), Jason Swisher ("Swisher"), Stormey D. Kissell ("Kissell"), and Christopher D. Blackburn ("Blackburn"). Plaintiffs King, Gower, Swisher, Kissell, and Blackburn were subsequently terminated from this case voluntarily, by Order dated December 1, 2015. [ECF No, 24].

1

Charles E. Samuels ("Samuels"), Director of the Federal Bureau of Prisons ("BOP"), and the following staff members at FCI-McKean: Bobby L. Meeks, Warden ("Meeks"); Howard Barron, Assistant Warden ("Barron"); Doug Bailey, Captain ("Bailey"); Richard Glogau, Supervisor Chaplain ("Glogau"); Brian Grimm, Assistant Chaplain ("Grimm"); Scott Wilson, BB Unit Manager ("Wilson"); Keith Williams, DA Unit Manager ("Williams"); T. Smith, BB Unit Case Counselor ("Smith"); Chase Farrell, DA Unit Case Manager ("Farrell"); Tina Swanson, Budget Analyst ("Swanson"); SIS Lt. Mr. Troublefield ("Troublefield"); SIS Lt. Mr. Ashley ("Ashley"); and Dan Boyer, SOR ("Boyer").

Plaintiffs generally allege that they have been denied opportunities, funds, and various religious items necessary to practice their Asatru/Odinist religious faith, in violation of the Religious Land Use & Institutionalized Persons Act of 2000, 42 U.S.C. § 2000cc, *et seq.* ("RLUIPA"); the Religious Freedom Restoration Act of 1993, 42 U.S.C. § 2000bb, *et seq.* ("RFRA"); and the first, fifth, and eighth amendments to the United States Constitution, pursuant to <u>Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics</u>, 403 U.S. 388 (1971).[3] As relief for their claims, Plaintiffs seek injunctive relief and punitive damages.

Defendants have filed a motion to dismiss or, in the alternative, motion for summary judgment [ECF No. 13], arguing that (1) Plaintiff Thompson must be dismissed from this case

---

[3] Plaintiffs also purport to allege violations of the Administrative Procedures Act, 5 U.S.C. §§ 551-702 ("APA") and the Civil Rights Act of 1964; however, as Defendants point out, the APA is focused upon administrative record review of a final agency action, which is not at issue in this case, 5 U.S.C. §§ 704, 706, and the Civil Rights Act of 1964 generally pertains to claims of employment discrimination, which are not present here. *See* 42 U.S.C. § 2000e, *et seq*. As a result, these claims will be summarily dismissed.

for failing to exhaust his administrative remedies;[4] (2) Plaintiffs' RLUIPA claims must be dismissed because they only apply to state and local governments, not a federal prison; (3) Plaintiffs' RFRA claims must be dismissed because they have failed to allege how any individual Defendant created a "substantial burden" on their ability to exercise religious rights; (4) Plaintiffs' First Amendment retaliation claim must be dismissed because they cannot demonstrate any connection between the practice of their religion and any adverse action taken by any of the Defendants; and (5) all other constitutional claims are defective because "Plaintiffs' generalized assertion of liability fails to specifically allege wrongdoing on behalf of any individual Defendant." Plaintiffs have since filed a brief in response to Defendants' motion, which seeks to clarify their claims against each of the individual Defendants. [ECF No. 26]. In light of Plaintiffs' *pro se* status, their brief will be considered as a supplement to Plaintiffs' complaint for purposes of deciding Defendants' motion.

### B. Standards of Review

#### 1. Motion to Dismiss

A motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) must be viewed in the light most favorable to the plaintiff and all the well-pleaded allegations of the complaint must be accepted as true. Erickson v. Pardus, 551 U.S. 89, 93-94 (2007). A complaint must be dismissed pursuant to Rule 12 (b)(6) if it does not allege "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007).

---

[4] Defendants actually argue that all Plaintiffs other than Plaintiffs Pauley and Rhoades failed to exhaust their administrative remedies; however, since Plaintiff Thompson is the only other Plaintiff remaining in this action, this

See also Ashcroft v. Iqbal, 556 U.S. 662, 678 (May 18, 2009) (specifically applying Twombly analysis beyond the context of the Sherman Act).

The Court need not accept inferences drawn by plaintiff if they are unsupported by the facts as set forth in the complaint. See California Pub. Employee Ret. Sys. v. The Chubb Corp., 394 F.3d 126, 143 (3d Cir. 2004) citing Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997). Nor must the court accept legal conclusions set forth as factual allegations. Twombly, 550 U.S. at 555, citing Papasan v. Allain, 478 U.S. 265, 286 (1986). See also McTernan v. City of York, Pennsylvania, 577 F.3d 521, 531 (3d Cir. 2009) ("The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions"). A Plaintiff's factual allegations "must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 556, citing 5 C.Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-36 (3d ed. 2004). Although the United States Supreme Court does "not require heightened fact pleading of specifics, [the Court does require] enough facts to state a claim to relief that is plausible on its face." Id. at 570.

In other words, at the motion to dismiss stage, a plaintiff is "required to make a 'showing' rather than a blanket assertion of an entitlement to relief." Smith v. Sullivan, 2008 WL 482469, at *1 (D.Del. February 19, 2008) quoting Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008). "This 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element." Phillips, 515 F.3d at 234, quoting Twombly, 550 U.S. at

---

argument effectively applies only to him.

556.

The Third Circuit subsequently expounded on the Twombly/Iqbal line of cases:

> To determine the sufficiency of a complaint under Twombly and Iqbal, we must take the following three steps:
>
> First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.' Second, the court should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.' Finally, 'where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.'

Burtch v. Milberg Factors, Inc., 662 F.3d 212, 221 (3d Cir. 2011) quoting Santiago v. Warminster Twp., 629 F.3d 121, 130 (3d Cir. 2010).

### 2. **Summary Judgment**

Federal Rule of Civil Procedure 56(a) provides that summary judgment shall be granted if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Under Rule 56, the district court must enter summary judgment against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Summary judgment may be granted when no "reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (19896). "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex, 477 U.S. at 323 quoting Fed.R.Civ.P. 56.

The moving party has the initial burden of proving to the district court the absence of evidence supporting the non-moving party's claims. Celotex, 477 U.S. at 330. See also Andreoli v. Gates, 482 F.3d 641, 647 (3d Cir. 2007); UPMC Health System v. Metropolitan Life Ins. Co., 391 F.3d 497, 502 (3d Cir. 2004). When a non-moving party would have the burden of proof at trial, the moving party has no burden to negate the opponent's claim. Celotex, 477 U.S. at 323. The moving party need not produce any evidence showing the absence of a genuine issue of material fact. Id. at 325. "Instead, … the burden on the moving party may be discharged by 'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." Id. After the moving party has satisfied this low burden, the nonmoving party must provide facts showing that there is a genuine issue for trial to avoid summary judgment. Id. at 324. "Rule 56(e) permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves." Id. See also Saldana v. Kmart Corp., 260 F.3d 228, 232 (3d Cir. 2001); Garcia v. Kimmell, 2010 WL 2089639, at * 1 (3d Cir. 2010) quoting Podobnik v. U.S. Postal Serv., 409 F.3d 584, 594 (3d Cir. 2005) (the non-moving party "must present more than just bare assertions, conclusory allegations or suspicions to show the existence of a genuine issue.").

In considering these evidentiary materials, "courts are required to view the facts and draw reasonable inferences in the light most favorable to the party opposing the summary judgment motion." Scott v. Harris, 550 U.S. 372, 378 (2007) (internal quotation marks and alterations omitted). See also Doe v. Cnty. of Centre, Pa., 242 F.3d 437, 446 (3d Cir. 2001) (when applying this standard, the court must examine the factual record and make reasonable inferences

therefrom in the light most favorable to the party opposing summary judgment).

When considering a motion for summary judgment, the court is not permitted to weigh the evidence or to make credibility determinations, but is limited to deciding whether there are any disputed issues and, if there are, whether they are both genuine and material. Anderson., 477 U.S. at 248, 255 ("only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted."). In determining whether the dispute is genuine, the court's function is not to weigh the evidence or to determine the truth of the matter, but only to determine whether the evidence of record is such that a reasonable jury could return a verdict for the nonmoving party. Id. at 249. The court may consider any evidence that would be admissible at trial in deciding the merits of a motion for summary judgment. Horta v. Sullivan, 4 F.3d 2, 8 (1st Cir. 1993).

### 3. *Pro Se* Pleadings

*Pro se* pleadings, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers" Haines v. Kerner, 404 U.S. 519, 520 (1972). If the court can reasonably read pleadings to state a valid claim on which the litigant could prevail, it should do so despite failure to cite proper legal authority, confusion of legal theories, poor syntax and sentence construction, or litigant's unfamiliarity with pleading requirements. Boag v. MacDougall, 454 U.S. 364 (1982); United States ex rel. Montgomery v. Brierley, 414 F.2d 552, 555 (3d Cir. 1969) (Apetition prepared by a prisoner... may be inartfully drawn and should be read "with a measure of tolerance"); Freeman v. Department of Corrections, 949 F.2d 360 (10th

Cir. 1991). Under our liberal pleading rules, a district court should construe all allegations in a complaint in favor of the complainant. Gibbs v. Roman, 116 F.3d 83 (3d Cir.1997) (overruled on other grounds). See, e.g., Nami v. Fauver, 82 F.3d 63, 65 (3d Cir. 1996) (discussing Fed.R.Civ.P. 12(b)(6) standard); Markowitz v. Northeast Land Company, 906 F.2d 100, 103 (3d Cir. 1990) (same). Because Plaintiff is a *pro se* litigant, this Court will consider facts and make inferences where it is appropriate.

### C. Discussion

#### 1. Exhaustion of Administrative Remedies

Defendants contend that the claims of Plaintiff Thompson should be dismissed for his failure to comply with the exhaustion requirements of the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a) ("PLRA"), which provides:

> no action shall be brought with respect to prison conditions under section 1983 of this title ... by a prisoner confined in any jail, prisons, or other correctional facility until such administrative remedies as are available are exhausted.

Id.[5]

##### a. Exhaustion Standard

The requirement that an inmate exhaust administrative remedies applies to all inmate suits regarding prison life, including those that involve general circumstances as well as particular episodes. Porter v. Nussle, 534 U.S. 516 (2002); Concepcion v. Morton, 306 F.3d 1347

---

[5] It is not a plaintiff's burden to affirmatively plead exhaustion. Jones v. Bock, 549 U.S. 199, 217 (2007) ("...failure to exhaust is an affirmative defense under the PLRA, and that inmates are not required to specially plead or demonstrate exhaustion in their complaints."). Instead, the failure to exhaust must be asserted and proven by the defendants. Ray v. Kertes, 285 F.3d 287, 295 (3d Cir. 2002).

8

(3d Cir. 2002) (for history of exhaustion requirement). Administrative exhaustion must be completed prior to the filing of an action. McCarthy v. Madigan, 503 U.S. 140, 144 (1992). Federal courts are barred from hearing a claim if a plaintiff has failed to exhaust all the available remedies. Grimsley v. Rodriquez, 113 F.3d 1246 (Table), 1997 WL 2356136 (Unpublished Opinion) (10th Cir. May 8, 1997).[6] The exhaustion requirement is not a technicality, rather it is federal law which federal district courts are required to follow. Nyhuis v. Reno, 204 F.3d 65, 73 (3d Cir. 2000) (by using language "no action shall be brought," Congress has "clearly required exhaustion").[7]

The PLRA also requires "proper exhaustion" meaning that a prisoner must complete the administrative review process in accordance with the applicable procedural rules of that grievance system. Woodford v. Ngo, 548 U.S. 81, 87-91 (2006) ("Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules..."). Importantly, the exhaustion requirement may not be satisfied "by filing an untimely or otherwise procedurally defective ... appeal." Id. at 83; see also Spruill v. Gillis, 372 F.3d 218, 228-29 (3d Cir. 2004) (utilizing a procedural default analysis to reach the same conclusion) ("Based on our earlier

---

[6] Importantly, a plaintiff's failure to exhaust his administrative remedies does not deprive the district court of subject matter jurisdiction. Nyhuis v. Reno, 204 F.3d 65, 69 n.4 (3d Cir. 2000) ("...[W]e agree with the clear majority of courts that §1997e(a) is *not* a jurisdictional requirement, such that failure to comply with the section would deprive federal courts of subject matter jurisdiction.").

[7] There is no "futility" exception to the administrative exhaustion requirement. Banks v. Roberts, 2007 WL 3096585, at * 1 (3d Cir.) citing Nyhuis, 204 F.3d at 71 ("[Plaintiff's] argument fails under this Court's bright line rule that 'completely precludes a futility exception to the PLRA's mandatory exhaustion requirement.'"). See also Woodford v. Ngo, 548 U.S. 81, 85 (2006) ("Indeed, as we held in *Booth*, a prisoner must now exhaust administrative remedies even where the relief sought-monetary damages-cannot be granted by the administrative process.").

discussion of the PLRA's legislative history, [...] Congress seems to have had three interrelated objectives relevant to our inquiry here: (1) to return control of the inmate grievance process to prison administrators; (2) to encourage development of an administrative record, and perhaps settlements, within the inmate grievance process; and (3) to reduce the burden on the federal courts by erecting barriers to frivolous prisoner lawsuits.").

### **b.** **The Administrative Process Available to Federal Inmates**

So then, no analysis of exhaustion may be made absent an understanding of the administrative process available to state inmates. "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.' The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." Jones v. Bock, 107 U.S. at 217.

The BOP has established a multi-tier system whereby a federal prisoner may seek formal review of any aspect of his imprisonment. 28 C.F.R. §§ 542.10-542.19 (1997). First, "an inmate shall ... present an issue of concern informally to staff, and staff shall attempt to informally resolve the issue before an inmate submits a Request for Administrative Remedy." 28 C.F.R. § 542.13(a). Second, if an inmate at an institution is unable to informally resolve his complaint, he may file "a formal written Administrative Remedy Request, on the appropriate form (BP-9), [within] 20 calendar days following the date on which the basis for the Request occurred." 28 C.F.R. § 542.14(a). The warden has twenty (20) days in which to respond. 28 C.F.R. § 542.18. An inmate who is not satisfied with the warden's response may submit an appeal, on the

appropriate form (BP-10), to the appropriate Regional Director within twenty (20) calendar days from the date the warden signed the response. 28 C.F.R. § 542.15(a). An inmate who is not satisfied with the Regional Director's response may submit an appeal, on the appropriate form (BP-11), to the General Counsel within thirty (30) calendar days from the date the Regional Director signed the response. Id. The Regional Director has thirty (30) days and the General Counsel has forty (40) days to respond. 28 C.F.R. § 542.18.

### c. Analysis

In support of their contention that Plaintiff Thompson failed to exhaust his administrative remedies, Defendants have submitted the Declaration of Ondreya Barksdale, a Paralegal Specialist with the BOP's Northeast Regional Office. Ms. Barksdale declares that, while Plaintiffs Pauley and Rhoades have fully exhausted their administrative remedies, "[Plaintiff] Thompson has never submitted a Request for Administrative Remedy to BOP staff at any institution or for any issue. As such, Thompson has failed to exhaust his administrative remedies concerning any of the allegations he has raised in this case." (ECF No. 14-1, Declaration of Ondreya Barksdale, at ¶16). Plaintiffs have not provided evidence or argument to the contrary, as they must in order to survive Defendants' fully supported motion for summary judgment as to Plaintiff Thompson's claims.

To the extent Plaintiffs' response to Defendants' motion alleges that "the (2) Inmate Representatives of the Asatru/Odinist Faith Community Plaintiff(s) Pauley and Rhoades have exhausted all of the Administrative Remedies as the voice of that Community" (ECF No. 26, p. 1), this allegation is factually and legally incorrect. Generally, the BOP regulations provide that

"an inmate may not submit a request or appeal on behalf of another inmate." 28 C.F.R. § 542.10(a). However, as Plaintiffs cite in their response, Program Statement 1330.13 provides for an exception in that "the president of a recognized inmate organization may submit a request on behalf of that organization regarding an issue that specifically affects that organization." As this Court previously recognized in Ellis v. United States, 2009 WL 440390 (W.D.Pa. February 23, 2009),

> [t]he terms 'recognized' and 'inmate organization' are addressed in Program Statement 5381.05 (establishing basic procedures concerning the establishment, regulation and operation of inmate organizations and providing a uniform system whereby all organizations will operate within a similar framework of administrative and financial management). Although the Bureau of Prisons permits 'inmate organizations for recreational, social, civic and benevolent purposes,' religious groups are not included. Moreover, the Program Statement explains that to be a "recognized" organization, the inmate organization must request prior approval from the Warden.

Ellis, at *7 n. 5.

Here, as in Ellis, the record is devoid of any evidence that the Asatru/Odinist Faith Community was a "recognized inmate organization" at FCI-McKean during the relevant period of time. Thus, no other inmate could have exhausted administrative remedies on behalf of Thompson as no one was authorized to do so. See Rogers v. United States, 696 F.Supp.2d 472, 485 (W.D.Pa. 2010). As a result, summary judgment will be granted in favor of Defendants and against Plaintiff Thompson on all claims.

### 2. RLUIPA claims

Defendants argue that Plaintiffs' RLUIPA claims must be dismissed because the Act does not apply to the federal government and its officials. The Court agrees. Under RLUIPA,

"government" is defined as "a State, county, municipality, or other governmental entity created under the authority of a state," and "any branch, department, agency, instrumentality or official, thereof, and "any other person acting under color of State law." 42 U.S.C. 2000cc-5(4). Accordingly, federal courts have held that RLUIPA "'only applies to state and local governments, not a federal prison.'" Rogers v. United States, 696 F.Supp.2d 472, 486 (W.D.Pa. 2010), quoting, Pineda-Morales v. DeRosa, 2005 WL 1607276, at *4 (E.D. N.J. 2005). See also Navajo Nation v. U.S. Forest Service, 535 F.3d 1058 (9th Cir. 2008).

Because Plaintiffs' RLUIPA claims are asserted against federal prison officials, they are not cognizable and will be dismissed.

### 3. Personal Involvement

#### a. Defendants Samuels, Meeks, Barron, and Bailey

In their opposition brief, Plaintiffs clarify that their claims against Defendants Samuels, Meeks, Barron, and Bailey "fall under the doctrine of 'Respondent [sic] Superior'" because they have allegedly allowed Defendant Glogau to "get away with multiple constitutional violations against the Plaintiffs herein." (ECF No. 26, Plaintiffs' opposition brief, at pp. 2-3).

When a supervisory official is sued in a civil rights action, liability can only be imposed if that official played an "affirmative part" in the complained-of misconduct. Chinchello v. Fenton, 805 F.2d 126, 133 (3d Cir. 1986). Although a supervisor cannot encourage constitutional violations, a supervisor has "no affirmative constitutional duty to train, supervise or discipline so as to prevent such conduct." Id. quoting Brown v. Grabowski, 922 F.2d 1097, 1120 (3d Cir. 1990), cert. denied, 501 U.S. 1218 (1991). The supervisor must be personally involved in the

alleged misconduct. Rode v. Dellarciprete, 845 F.2d 1958, 1207 (3d Cir. 1988). Supervisor liability cannot be predicated solely on *respondeat superior*. Iqbal, 556 U.S. at 676; Rizzo v. Goode, 423 U.S. 362 (1976).

Here, Plaintiffs acknowledge that their claims against Defendants Samuels, Meeks, Barron, and Bailey are predicated solely on *respondeat superior*. As a result, said claims will be dismissed for failure to state a cause of action upon which relief may be granted, and Defendants Samuels, Meeks, Barron, and Bailey will be terminated from this case.

### **b.** **Defendants Wilson, Smith, Williams, Farrell, and Troublefield**

Plaintiffs also clarify in their opposition brief that their claims against Defendants Wilson, Smith, Williams, and Farrell are based solely on their involvement in the administrative remedy process. In particular, Plaintiffs allege that these Defendants "simply agreed with the actions/inactions of Def. Glogau without investigating" Plaintiffs' allegations of wrongdoing through the "Administration Remedy Informal Resolution Form BP-8 process." (ECF No. 26, Plaintiffs' opposition brief, at p. 6). Similarly, Plaintiffs' claims against Defendant Troublefield arise solely from his alleged failure to investigate Defendant Glogau's alleged "misconducts & discriminatory retaliations towards the Asatru Faith Community." (Id. at p. 5).

The Third Circuit has made clear that, if a grievance official's only involvement is investigating and/or ruling on an inmate's grievance after the incident giving rise to the grievance has already occurred, there is no personal involvement on the part of that official. Rode, 845 F.2d at 1208; Mincy v. Chmielsewski, 508 Fed. Appx. 99, 104 (3d Cir. 2013) (an "officer's review of, or failure to investigate, an inmate's grievances generally does not satisfy the requisite personal

14

involvement"); Pressley v. Beard, 266 Fed. Appx. 216, 218 (3d Cir. 2008) ("The District Court properly dismissed these [supervisory] defendants and any additional defendants who were sued based on their failure to take corrective action when grievances or investigations were referred to them"). Because Plaintiffs' claims against these Defendants arise solely from said Defendants' involvement in the investigation and/or resolution of Plaintiffs' grievances, such claims will be dismissed and Defendants Wilson, Smith, Williams, Farrell, and Troublefield will be terminated from this case.

### 4. RFRA claims

Under RFRA, the "government shall not substantially burden a person's exercise of religion even if the burden results from a rule of general applicability." 42 U.S.C. § 2000bb-1(a).[8] In order to establish a *prima facie* case, a plaintiff must show that his "exercise of religion" was "substantially burdened." 42 U.S.C. 2000bb-1(a). Although RFRA does not define the term "substantial burden," the Third Circuit has held that a substantial burden "'exists where: 1) a follower is forced to choose between following the precepts of his religion and forfeiting benefits otherwise generally available to other inmates versus abandoning one of the precepts of his religion in order to receive a benefit; OR 2) the government puts substantial pressure on an adherent to substantially modify his behavior and to violate his beliefs.'" Norwood v. Strada, 249 Fed. Appx. 269, 271 (3d Cir. 2007) quoting Washington v. Klem, 497 F.3d 272, 280 (3d Cir.

---

[8] In City of Boerne v. Flores, 521 U.S. 507 (1997), the Supreme Court held that RFRA is unconstitutional as to state and local governments; however, Flores has not been interpreted to preclude RFRA claims against the federal government. See generally, Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal, 546 U.S. 418 (2006).

2007).

Once a plaintiff establishes a *prima facie* case under RFRA, the burden shifts to the government to demonstrate that "application of the burden" to the plaintiff "is in furtherance of a compelling governmental interest" and "is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000bb-1(b)(1-2). "'When considering the government's burden, we owe due deference to the experience and expertise of prison and jail administrators in establishing necessary regulations and procedures to maintain good order, security and discipline, consistent with consideration of costs and limited resources.'" Rogers, 696 F.Supp.2d at 487, quoting Smith v. Kyler, 295 Fed.Appx. 479, 484 (3d Cir. 2008).

Here, the only remaining Defendant against whom Plaintiffs plausibly asserts a RFRA claim is Defendant Glogau.[9] In particular, Plaintiffs claim that Defendant Glogau "has forced [them] to choose between following the precept of Asatru/Odinism and forfeit the Weekly Fainings, the Sumbels in indoors or in outdoor worship areas or abandon Odinism, thereby has modified the practices to what he thinks he can justify." (ECF No. 26, Plaintiffs' Opposition Brief, at p. 3). Specifically, Plaintiffs' allege that "both Native American and Asatru/Odinist faith communities have an assigned outdoor worship area yet the Native Americans can use their area

---

[9] In particular, the only claim asserted against Defendant Ashley is a retaliation claim arising from his alleged threat to have Plaintiff Pauley placed in the segregated housing unit ("SHU") if he continued to pursue information regarding the budgets and expenditures of other faith groups at FCI-McKean (ECF No. 26, Plaintiff's Opposition Brief, at p. 5), while his claims against Defendants Grimm, Swanson, and Boyer all arise from their alleged failure to report Defendant Glogau's alleged improprieties to their superiors. None of these allegations show that any of these Defendants "substantially burdened" Plaintiffs' exercise of religion under RFRA, as such has been defined by the Third Circuit Court. See Washington, 497 F.3d at 280. As a result, Defendants' motion to dismiss Plaintiff's RFRA claim as against Defendants Ashley, Grimm, Swanson, and Boyer will be granted.

16

Weekly if they choose every Thursday morning, while [Plaintiffs] can only access their area 'Once Per Month.'" (Id.). In addition, Plaintiffs assert that the Pagan religious groups at FCI-McKean, including the Asatru/Odinist religion, are being deprived of sufficient budgetary funds to purchase necessary religious items for their rituals and ceremonies, as well as learning materials, such as books and DVD's. (Id. at p. 4). These allegations sufficiently allege that Plaintiffs' exercise of their religion was substantially burdened by the alleged actions of Defendant Glogau so as to overcome Defendants' motion to dismiss.

As for Defendants' alternative motion for summary judgment, the Court notes that Plaintiffs' allegations are supported and amplified by the detailed Affidavit of Plaintiff Pauley, who adds, *inter alia*, that Defendant Glogau has refused to accommodate the Asatru faith's religious feasts, particularly the "High Holy Feast of the Solstice & Equinox," and the "High Feast of Yules Meal." (ECF No. 26-1, Affidavit of Plaintiff Pauley, at ¶ 12). These allegations are only partially offset by Defendant Glogau's own Declaration, which was submitted prior to Plaintiff Pauley's Affidavit [ECF No. 14-2]. Moreover, Defendant Glogau has not set forth a compelling governmental interest that overrides the entirety of Plaintiffs' allegations. As a result, there remain genuine issues of material fact as to whether Plaintiffs' religious practices were substantially burdened by the alleged actions of Defendant Glogau, such that Defendants' motion for summary judgment as to Plaintiff's RFRA claim against Defendant Glogau will also be denied.

### **5.** **Retaliation**

Retaliation for the exercise of one's constitutional rights is a separate matter, requiring a

distinct legal analysis. "Retaliation for the exercise of constitutionally protected rights is itself a violation of rights secured by the Constitution actionable under section 1983." See White v. Napoleon, 897 F.2d 103, 111-12 (3d Cir.1990). "Government actions, which standing alone, do not violate the Constitution, may nonetheless be constitutional torts if motivated in substantial part by a desire to punish an individual for exercise of a constitutional right." Mitchell v. Horn, 318 F.3d 523, 530 (3d Cir. 2003), quoting Allah v. Seiverling, 229 F.3d 220, 224-25 (3d Cir. 2000).

In order to state a prima facie case of retaliation, a prisoner must demonstrate:

> 1) the conduct in which he was engaged was constitutionally protected;
>
> 2) he suffered "adverse action" at the hands of prison officials[10]; and
>
> 3) his constitutionally protected conduct was a substantial or motivating factor in the decisions to discipline him.[11]

Carter v. McGrady, 292 F.3d 152, 157-58 (3d Cir. 2002), quoting Rauser v. Horn, 241 F.3d 330, 333 (3d Cir. 2001). Following the satisfaction of a prima facie case of retaliation, the burden then shifts to the defendants to demonstrate, by a preponderance of the evidence, that their

---

[10] To show an "adverse action," the plaintiff must demonstrate that defendants' action were "sufficient to deter a person of ordinary firmness from exercising his [constitutional] rights." Allah v. Al-Hafeez, 208 F.Supp.2d 520,535 (E.D. Pa. June 24, 2002), quoting Allah v. Seiverling, 229 F.3d at 225. See also Dixon v. Brown, 38 F.3d 379, 379 (8th Cir. 1994) (a plaintiff "need not show a separate, independent injury as an element of the case ... because the retaliatory disciplinary charge strikes at the heart of an inmate's constitutional right to seek redress of grievances, [and] the injury to his right inheres in the retaliatory conduct itself.").

[11] In analyzing the third element of the retaliation test, the court must determine whether there is a causal connection between the exercise of the constitutional rights and the adverse actions. "A suggestive temporal proximity between the protected activity and an alleged retaliatory act may be sufficient to meet the causal link requirement of the prima facia case." Allah v. Al-Hafeez, 208 F.Supp.2d at 535, citing Rauser, 241 F.3d at 330 and Johnson v. Rendell, 56 F.Supp.2d 547, 552 (E.D. Pa. 1999).

actions would have been the same, even if Plaintiff were not engaging in the constitutionally protected activities. Carter, 292 F.3d at 158. "Once a prisoner has demonstrated that his exercise of a constitutional right was a substantial or motivating factor in the challenged decision, the prison officials may still prevail by proving that they would have made the same decision absent the protected conduct for reasons reasonably related to a legitimate penological interest." Rauser, 241 F.3d at 334. In evaluating a prison official's opinion, "[p]rison administrators should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." Bell v. Wolfish, 441 U.S. 520, 547 (1979).

Here, Plaintiffs' allege retaliation claims against Defendants Glogau and Ashley. In particular, Plaintiffs' claim that (1) Defendant Glogau retaliated against them by threatening to "make sure the Asatru Group gets 'nothing,' but the bare minimal & less" for filing grievances against him (ECF No. 26-1, Plaintiff Pauley's Affidavit, at ¶ 6), and then reducing their once per month outdoor worship time from 7-8 hours to 3-4 hours, and gradually reducing their program funds from $334.53 in fiscal year 2009-2010 to $0.00 in fiscal year 2013-2014 (ECF No. 26, Plaintiffs; opposition brief, at p. 4); and (2) Defendant Ashley retaliated against Plaintiff Pauley by threatening to lock him in the SHU if he continued to pursue information about other faith groups budgets and expenditures (ECF No. 26, Plaintiffs' opposition brief, at p. 5, ¶ D).

Neither of Plaintiffs' retaliation claims was stated with specificity in Plaintiffs' original complaint and, thus, they are not adequately addressed or opposed by Defendants' motion. To the extent Defendant Glogau's Declaration attempts to address the underlying bases for Plaintiffs'

retaliation claims, his Declaration is opposed by Plaintiff Pauley's Affidavit, thus creating genuine issues of material fact that cannot be resolved at this stage of the proceeding. As a result, Defendants' motion will be denied as to Plaintiffs' retaliation claims against Defendants Glogau and Ashley.

### 6. Constitutional Claims

In their original complaint, Plaintiffs ostensibly raise various constitutional claims against Defendants, generally citing violations of the First, Fifth, Eighth, and Fourteenth Amendments (ECF No. 1-1, Complaint, at p. 4). Defendants have moved to dismiss these claims based on Plaintiffs' failure to allege how any of the individual Defendants were personally involved in the alleged constitutional violations. However, Plaintiffs have since filed their opposition brief, together with Plaintiff Pauley's Affidavit, which set forth specific allegations against each Defendant. These additional allegations have been accepted by this Court as supplements to the original complaint, which have not specifically addressed or opposed by Defendants' motion. As a result, Plaintiffs' constitutional claims will be allowed to proceed at this early stage of the proceeding, but only against Defendants Glogau, Grimm, Swanson, Ashley, and Boyer, as all other Defendants will be dismissed from this case for their lack of personal involvement, as previously discussed herein.

An appropriate Order follows.

/s/ Susan Paradise Baxter
SUSAN PARADISE BAXTER
United States Magistrate Judge

Dated: September 29, 2016